UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FURNACE BROOK LLC,

                        Plaintiff,

        - against -

OVERSTOCK.COM, INC.

                        Defendant.
-------------------------------------------------------------x

05 Civ. 7329 (CLB)

*Memorandum and Order*

Brieant, J.

      Before the Court in this patent infringement case are Plaintiff's motion for partial summary judgment dismissing the affirmative defense of inequitable conduct (Doc. No. 55) filed June 29, 2006, and Defendant's cross-motion for partial summary judgment in its favor based on inequitable conduct (Doc. 57) filed July 14, 2006. Opposition papers and responses were filed and oral argument was heard by the Court on July 28, 2006.

      A *Markman* hearing was held in this case on March 7, 2006, and this Court agreed to withhold issuing a *Markman* decision, while the parties attempted to achieve resolution of the matter through mediation. On May 26, 2006, the parties informed the Court that their mediation efforts following the March *Markman* hearing were unsuccessful. Familiarity of the reader with all other prior proceedings in this case is presumed, and are herein stated only to the extent necessary for clarity.

      Furnace Brook sued Overstock for infringement of U.S. Patent No. 5,721,832 ("the '832 patent"). As an affirmative defense and counterclaim, Overstock claimed that the '832 patent is

1

unenforceable due to inequitable conduct and fraud before the United States Patent and Trademark Office ("USPTO" or "PTO").

The following facts are assumed true for purposes of these motions only. Overstock operates a website "overstock.com," through which people make online purchases of discount, name-brand merchandise held for sale primarily over the internet. Furnace Brook is the owner by assignment of U.S. Patent No. 5,721,832 ("the '832 patent"), entitled *Method and Apparatus for an Interactive Computerized Catalog System*, which issued in 1998, and was assigned in 1999 to Hardwarestreet.com, Inc. ("Hardware Street"), a Nevada company that subsequently filed for bankruptcy in 2001. The '832 patent lapsed in 2002 due to a failure to pay the maintenance fee of $425.00. On June 10, 2003, Furnace Brook purchased both the expired '832 patent and another unexpired patent via an internet auction for a total price of $28,775. The '832 patent was reinstated at the request of Furnace Brook on July 17, 2003. It is the circumstances surrounding the lapse and reinstatement of the '832 patent, which form the basis of the dispute as to Furnace Brook's alleged inequitable conduct.

Barry L. Solomon was the Chapter 7 Trustee for Hardware Street, which filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 17, 2001. Included in its Schedule B were five patents, including the '832 patent. After attempting unsuccessfully a conventional sale of the estate's intellectual property, Mr. Solomon retained an internet broker to auction the property. In a Motion to Confirm the Internet Auction of this and another patent, Mr. Solomon stated to the Bankruptcy Court:

> The maintenance fees on at least one of these patents had lapsed due to the lack of funds in this bankruptcy estate. Furnace Brook LLC is aware of this and understands that the purchase of the patents is as is, where is, without warranty and without condition of revival of any expired patent. The trustee has agreed to cooperate with the purchaser of the patents to provide information and an affidavit, if necessary, to the Patent and Trademark Office in the purchaser's efforts to revive the expired patent.

*Motion, Barr Decl., Exh. C.* The Motion was dated April 14, 2003.

Mr. Gomez is the owner and principal of Furnace Brook, which purchased the '832 patent via the internet auction just described. Mr. Gomez retained Attorney Liebowitz as his attorney in attempting to revive the patent. After talking with Mr. Solomon, Mr. Liebowitz submitted a "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent under 37 C.F.R. §1.378 (C)," in which he stated that the "delay in payment of the maintenance fee was unintentional." *Summerfield Decl., Exh. A*.

Overstock now alleges that Edward Gomez, the principal of Furnace Brook, and his attorneys intentionally misled the PTO in order to revive the then-lapsed patent, and thereby engaged in inequitable conduct. Overstock contends that it was inequitable conduct for Plaintiff to obtain reinstatement of the '832 patent by informing the PTO that the failure to pay the maintenance fee was "unintentional." Because Plaintiff purchased the '832 patent through an internet Bankruptcy Court auction, Overstock contends that Plaintiff knew or should have known that the '832 patent was abandoned intentionally by the Bankruptcy Trustee, its prior owner and, therefore, that the patent should not have been reinstated. It alleges that Furnace Brook acted with intent to deceive the PTO so as to obtain reinstatement of the '832 patent, this constituting inequitable conduct and/or fraud upon the PTO.

3

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

Whether inequitable conduct during the revival of the patent renders the patent unenforceable depends on the knowledge, intent and actions of Mr. Gomez and Mr. Liebowitz during the proceedings before the PTO. In order to revive the patent, they were required to represent truthfully that the patent lapsed inadvertently. Furnace Brook argues that there is no evidence that Mr. Solomon ever told either of them that the failure to pay was intentional, and that the only evidence on the issue is the uncontroverted testimony of Mr. Gomez that Mr. Solomon told them that the failure to pay was unintentional, rendering summary judgment appropriate.[1] The Court disagrees.

In his deposition, Mr. Solomon testified first that he made an intentional decision not to pay the maintenance fee because of deficient funds. *Solomon Deposition at 26, 28*. Mr. Solomon testified that he handles between 800 and 1000 bankruptcy cases a year, has no specific docket

---

[1] The Court was informed during oral argument that Mr. Liebowitz was not deposed as he was contacted but "wouldn't talk" to Defense counsel. The Court suggested he be subpoenaed. Apparently, this has not been done. As noted below, even without his testimony, there are contested issues of fact in the case.

system in place to keep track of when intellectual property maintenance fees are due, but that these matters are tracked "on a case-by-case basis." *Solomon Id.at 56.* He does not recall when he first became aware that a maintenance fee was due or had not been paid, but he does know that he asked about whether the fees had been paid or not at the meeting of creditors. *Id. at 56-57.* Mr. Solomon testified that he does not remember what he told Mr. Gomez or Mr. Liebowitz. He also stated that although he does not recall whether Mr. Gomez ever asked him if the lapse was intentional or unintentional, he would have told him, if asked, that the fee was not paid because of "insufficient funds in the estate" because he would have told Mr. Gomez "exactly what's in the motion [to confirm the internet auction]." *Id. at 28-29.* Mr. Gomez avers that Mr. Solomon told him and Mr. Liebowitz that the failure to pay was unintentional.

As conceded by Furnace Brook, the testimony of the Trustee is to some extent inconsistent. On direct examination, Mr. Solomon testified that he had made a conscious decision not to pay the maintenance fees for the '832 patent, but on cross-examination did not recall whether he became aware of the maintenance fee issue regarding the patent before or after the patent had lapsed. *Plaintiff's Memo at 8; Defendant's 56.1 at 18.* Furnace Brook argues that since Mr. Solomon might possibly have become aware of the maintenance fee after the patent lapsed, the finding of an unintentional lapse is supported. Mr. Solomon testified that in his "business judgment there wasn't [sic] sufficient funds to pay it and get it reinstated." *Solomon Deposition at 26.* Overstock argues, and the Court agrees, that whether the Trustee knew before the patent expired that the fee wasn't paid or whether he learned after the patent expired and then decided not to try to revive it, is not dispositive of the knowledge and intent of Messrs. Gomez

5

and Liebowitz as to whether there was an intentional abandonment of the patent. This is the sole issue of fact bearing on whether there was inequitable conduct before the PTO.

Mr. Solomon stated in his motion to the Bankruptcy Court that the patent lapsed due to the lack of funds in the bankruptcy estate and he stated in a deposition that it was an intentional lapse. What Messrs. Gomez and Liebowitz were told by Mr. Solomon is at least brought into question by these statements.

The Court finds it doubtful that a bankruptcy trustee would willfully allow a patent which he intended to offer for sale, to lapse for the sake of saving $425.00. The Court disagrees with Furnace Brook that Mr. Solomon's deposition testimony that he does not recall what he told Messrs. Gomez and Liebowitz (rendering Gomez' statement uncontroverted), renders summary judgment in Plaintiff's favor appropriate. Here, there remain genuine disputed issues of material fact as to Mr. Solomon's actual intent, which, once determined by a fact-finder, may help answer the question of what he told Messrs. Gomez and Liebowitz at the relevant time, which in turn answers the question as to their knowledge and intent, when representing to the PTO that the patent lapsed unintentionally.

As is logically indicated by the filing of cross motions for summary judgment on the issue of whether there was inequitable conduct before the PTO, the intentional or unintentional nature of the failure to pay the maintenance fee, and the knowledge and intent of Messrs. Gomez

and Liebowitz in making representations to the PTO, remain in dispute and accordingly require credibility determinations by a trier of fact. In this case in which a jury has been demanded, it will act within its normal province at trial to determine these disputed issues of material fact, which preclude the grant of summary judgment to either party at this stage of the litigation.

Motions (Docs. 55 and 57) are denied.

X

      X

          X

            X

              X

SO ORDERED.

Dated: White Plains, New York
      August 10, 2006

SO ORDERED.

Dated: White Plains, New York
August 10, 2006

                                                                 Charles L. Brieant, U.S.D.J.